J. & J. H. Peck & Co. *v.* Joseph H. Walton and Trustee, and Elias Lyman, Claimant.

*Trustee Process. Negotiable Notes. Indorsee. What notice is necessary, to maker to perfect the rights of Indorsee.*

The indorsee, of a negotiable note, must give notice to the maker, of the indorsement, to perfect his right and defeat an attachment by trustee process; information of the fact of the indorsement, from a mere stranger to the paper, is not sufficient. *Quere,* Whether such notice from the original payee of the note, would be sufficient.

Book Account. Judgment to account, and an auditor was appointed, who reported in favor of the plaintiffs, March term, 1852, and judgment was rendered on the same, at the said term.

The trustee, R. D. Cornwall, disclosed, that on the 17th day of April, 1851, he executed and delivered, to the defendant Walton, four promissory notes for fifty dollars each, payable with interest in four, six, nine, and twelve months from the date thereof respectively, to said Walton or bearer; that, about one month after the execution of said notes as aforesaid, and, before service of process upon him in this cause, he was notified by L. B. Englesby, that two of said notes, to wit, the one payable in four, and the one payable in six months from said date, had been, by said Walton transferred to, and were owned by, said Englesby; and that payment of the same, was to be made to said Englesby.

The said Cornwall further disclosed, that on or about the 17th day of August, 1851, and before the service of process on him in

this cause, he understood from a conversation with L. B. Englesby, that Elias Lyman owned the two remaining notes; and further, that said Walton, at the time of the service of process in this cause, was indebted to him in the sum of twenty-one dollars and eighty-four cents, ($21,84,) for work and labor, before that time performed for said Walton. And said Cornwall says, that he is indebted in no other or further manner, and submits himself to the court, &c.

The plaintiffs made no claim on the trustee for the two notes transferred to said Englesby; but, claimed judgment against the trustee, for the two remaining notes.

Elias Lyman, entered as claimant for the two notes last aforesaid, filed his allegations of claim, to which plaintiff replied, and issue was joined on the replication.

Upon the trial of the case between the plaintiffs and claimant, it was conceded by plaintiffs, that the notes, claimed by said Lyman, were transferred to him for sufficient consideration, prior, to the service of the writ upon the trustee. It appeared from the evidence, that said Englesby, did not derive his knowledge of the transfer of said notes from the claimant, nor was he authorized by the claimant, to give to the trustee such information, or any notice of the transfer; nor was said Englesby, at the time of giving such information, or at any other time, interested in the notes claimed by said Lyman, or in giving notice to the trustee of the transfer to said Lyman.

The plaintiffs insisted that the foregoing facts did not show legal notice to the trustee of the transfer to Lyman. The county court, March term, 1852,—PIERPOINT, J. presiding,—decided, that the said facts, did show legal notice of the transfer, and rendered judgment in favor of the claimant, and that the trustee was not chargeable, &c. Exceptions by plaintiffs.

*Wires & Peck* for plaintiffs.

The act of 1841, (Comp. Stat. 262, sec. 45,) under which this case arises, intends a notice, from the person claiming under a negotiation by the principal debtor. It is an extension merely, of the general trustee act. The effect of the trustee law, is to subject to attachment, property, which is exempt from ordinary mesne process. Its purpose, is to facilitate the collection of debts. By analogy, the attachments by trustee process, should be governed by

J. & J. H. Peck & Co. *v.* Walton and Trustee.

the principle, which applies to an attachment made in the ordinary way, by mesne process. That principle is, that when personal property is sold, but is at the time of sale in the hands of an agent of the vendor, it is open to attachment upon his debts, unless the vendee remove it from the possession of the agent, or make him his agent to keep it; which relation he can establish, by notifying the latter of the change of ownership, and making a new contract with him. *Judd & Harris* v. *Langdon,* 5 Vt. 231. *Pierce* v. *Chipman,* 8 Vt. 324. *Whitney* v. *Lynde,* 16 Vt. 579. *Stiles* v. *Farrer,* 18 Vt. 444. *Blin* v. *Pierce,* 20 Vt. 25. *Blake* v. *Buchanan,* 22 Vt. 548.

The proviso of the act of 1841, in terms contemplates this construction, and could have no application, to a stranger who gives the notice.

*L. B. Englesby* for claimant.

The proceedings in trustee cases, are analagous to proceedings in equity. *Huntington* v. *Bishop,* 5 Vt. 188. And in equity, knowledge is notice.

The case shows notice to trustee of transfer, previous to the service of process, and it makes no difference from whom such notice comes, if from a person having knowledge of the facts. The words of the statute are conclusive. Comp. Stat. p. 262, sec. 45.

If the notice had been given by the payee, under the decisions in this State, there could be no doubt, but that the notice would be sufficient, and after the transfer, the *payee certainly has no interest in the note,* to entitle him to give notice, more than a third party knowing the fact.

The opinion of the court was delivered by

BENNETT, J. We think the trustee must be held chargeable. It is true, the case finds, that the two notes now in question were indorsed, while the notes were current, and before the service of this trustee process, to the claimant, for a valuable consideration. By the act of 1841, all negotiable paper, whether under or over due, is subjected to the operation of the trustee process, unless it shall have been negotiated, and notice given before the service of the trustee process, of such negotiation of the paper. It is claimed, that if the maker is informed, that the paper has been negotiated

before the writ is served, it is sufficient, though this information comes from a stranger to the paper, and one who in no way acts as the agent of the parties to the paper, and has no interest in it. But we think not.

The right to attach *negotiable* paper is complete, subject however to be defeated, and to defeat this right, notice, must be given of the indorsement. We think, the word "notice," in the statute, means something more, than knowledge. It is necessary that it should be given, to perfect the right of the indorsee; so that it may override the attachment, and it implies a duty to be performed by the indorsee, or through his procurement; and it may be likened in principle to a bill of exchange, where *notice* of protest and non-payment are necessary, to give the holder of the paper, a remedy against the drawer.

It is possible, that if this notice had come from Walton, the payee of the note, it would have been held sufficient. It was held in the case of *Stewart* v. *Barnum*, Bray. R. 173, that notice to the maker of a note, by the original payee, that the note had been indorsed, was sufficient notice, under the statute of 1798, to protect the indorsee against any after payment, made by the maker of the note to the indorser. But this is a point not now before the court, and no opinion is intended to be expressed upon it. We are all agreed, that the right of Lyman, the claimant, to the notes in question, cannot be perfected, so as to defeat the attachment, by such a notice, as this case shows.

The result is, the judgment of the county court must be reversed, and the trustee, adjudged chargeable as per disclosure, deducting his costs in the county court; the judgment against the principal debtor affirmed *pro forma*, without costs in this court; and judgment for the plaintiffs against the claimant, for their costs in this court.